1
2
3
4
5
6
7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11   STEVEN WEST,                          )   Case No.: 1:24-cv-00293 JLT CDB
                                           )
12               Plaintiff,                )   ORDER GRANTING PLAINTIFF'S MOTION TO
                                           )   REMAND
13           v.                            )
                                           )
14   FCA US LLC, and DOES 1 through 20,    )   (Doc. 6)
     inclusive,                            )
15                                         )
                                           )
16               Defendants.               )
                                           )
17   _____)

18           Steven West seeks to hold FCA US LLC liable for breach of implied and express warranties

19   under California's Song-Beverly Act resulting from his lease of a defective Jeep Wrangler. (*See*

20   *generally* Doc. 1-1.) Defendant removed the case to this Court based upon an allegation of diversity

21   jurisdiction. (Doc. 1.) Before the Court is Plaintiff's fully briefed motion to remand. (Doc. 6.) For the

22   reasons set forth below, the motion is **GRANTED**.

23   **I.       Background and Procedural History**

24           On August 27, 2018, Plaintiff leased a 2018 Jeep Wrangler from Defendant. (Doc. 1-1 ¶ 5; Doc.

25   1-4 at 7-8.) As part of the lease, Plaintiff alleges he received express and implied warranties including,

26   *inter alia*, that the Vehicle would "be free from all defects in material and workmanship" and "conform

27   to the promises and affirmations of fact made." (Doc. 1-1 at 6-7 ¶ 7.) According to Plaintiff, he

28   delivered the Vehicle to Defendant's authorized service facilities for repair of "defects, malfunctions,

                                                    1

misadjustments, and/or nonconformities" on at least eight occasions. (*Id.* at 8 ¶ 10.) He contends the defects continue to exist and thus, Defendant has "failed to conform the Vehicle to the applicable warranties ... even after a reasonable number of attempts to repair was given." (*Id.* at 8-9 ¶ 13.) Plaintiff further alleges Defendant "intentionally failed and refused" to comply with his demands for replacement or restitution. (*Id.* at 11 ¶ 21.)

On February 1, 2024, Plaintiff filed a complaint in Kern County Superior Court, Case No. BCV-24-100362. (Doc. 1-1.) He seeks to hold Defendant liable for breach of implied and express warranties under California's Song-Beverly Act. (*Id.* at 5.) The complaint does not indicate a specific damages figure but alleges that the amount in controversy exceeds $35,000. (*See id.* at 9 ¶ 14.) The prayer for relief includes judgment for: (1) "replacement or restitution, at Plaintiff's election, according to proof;" (2) incidental damages; (3) consequential damages; (4) a civil penalty "in an amount not to exceed two times the amount of" actual damages; (5) attorneys' fees; (6) costs and expenses; (7) "the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted;" (8) "remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;" (9) pre-judgement interest; and (10) "[s]uch other relief the Court deems appropriate." (*Id.* at 14.)

On March 8, 2024, Defendant filed a Notice of Removal, asserting this Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1.) Defendant is a limited liability company and none of its members are residents of California. (*Id.* at 6 ¶¶ 18-20.) The parties dispute Plaintiff's domicile for purposes of establishing complete diversity. (*See id.* ¶ 17; Doc. 6 at 11.) Defendant maintains that Plaintiff seeks actual damages, a double civil penalty, and attorneys' fees, the sum of which exceeds $75,000 and thus, that the amount in controversy requirement for diversity jurisdiction is satisfied. (Doc. 1 at 9-11 ¶¶ 29-33.) In calculating actual damages, Defendant relies upon Plaintiff's allegation that the amount in controversy "exceeds $35,000.00." (Doc. 18 at 5-9.) Alternatively, Defendant calculates actual damages based on the lease price as provided in the parties' Lease Agreement. (*See, e.g.,* Doc. 1 at 9-10 ¶¶ 28, 32; Doc. 1-4 at 3 ¶ 8; Doc. 18-1 at 2 ¶¶ 3-4.)[1]

---

[1] In resolving the parties' dispute, the Court identified several inconsistent calculations. *See infra* III.A.2.a.

On April 26, 2024, Plaintiff filed a motion to remand this action to Kern County Superior Court, asserting removal was improper and Defendant fails to establish diversity jurisdiction. (Doc. 6.) Defendant filed its opposition, (Doc. 18), to which Plaintiff replied. (Doc. 19.)

## II.      Legal Standard

A defendant may remove a civil action under 28 U.S.C. § 1446 from state to federal district court so long as jurisdiction originally would lie in federal court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). When a party removes a case to federal court under 28 U.S.C. § 1446, that party bears the burden of showing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "[A]ny doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

## III.     Discussion and Analysis

Plaintiff argues that remand is appropriate because the potential recovery amounts relied on by Defendant are too speculative to satisfy the threshold for diversity jurisdiction. (Doc. 6 at 5.) Specifically, Plaintiff asserts that Defendant relies on a speculative maximum civil penalty calculation, as it is based on an equally "speculative and unsubstantiated" calculation of actual damages. (*Id*. at 6-7.) He also contends that Defendant's anticipated attorneys' fees are too speculative to include towards the amount in controversy. (*Id*. at 7.) Finally, Plaintiff contends that comity principles weigh in favor of remand and that Defendant fails to show that complete diversity exists. (*Id*. at 8-11.) Defendant opposes remand, arguing that it can meet its burden to show the amount in controversy requirement is satisfied. (Doc. 18.)

### A.      Amount in Controversy

The amount in controversy is "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In evaluating the amount in controversy in a case, courts first "consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy." *Abrego Abrego v. The*

3

1  *Dow Chem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*,

2  116 F.3d 373, 377 (9th Cir. 1997)).

3  　　　　When the plaintiff's complaint "does not contain any specific amount of damages sought, the

4  party seeking removal under diversity bears the burden of showing, by a preponderance of the

5  evidence, that the amount in controversy exceeds the statutory amount." *Lewis*, 627 F.3d at 397 (citing

6  *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 699 (9th Cir. 2007)). The notice of removal must

7  include "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."

8  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). If the plaintiff challenges

9  this allegation, "both sides submit proof and the court decides, by a preponderance of the evidence,

10  whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. This proof can include

11  affidavits, declarations, or other "summary-judgment-type evidence relevant to the amount in

12  controversy at the time of removal." *Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1197 (9th

13  Cir. 2015) (quoting *Singer*, 116 F.3d at 377); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117

14  (9th Cir. 2004) (courts consider "facts presented in the removal petition as well as any summary-

15  judgment-type evidence relevant to the amount in controversy at the time of removal.") (quotation

16  marks omitted).

17  　　　　　　　　1.　　　Face of the complaint

18  　　　　Defendant first contends it is evident from the face of the complaint that the amount in

19  controversy requirement is satisfied because the complaint alleges that Plaintiff "suffered damages in a

20  sum to be proven at trial in an amount that is not less than $35,00.00 [sic]."[2] (Doc. 18 at 5-6.) Because

21  Plaintiff also seeks "incidental, consequential, and exemplary damages," along with a civil penalty of

22  up to two times the amount of actual damages, Defendant asserts that these allegations alone meet the

23  amount in controversy threshold "without even considering attorneys' fees." (*Id*. at 5; *see also id*. at 8

24

25  ───────────────

26  [2] Paragraph 14 states:

27  　　　*The amount in controversy exceeds THIRTY-FIVE THOUSAND DOLLARS ($35,000.00),* exclusive of interest and costs, for which Plaintiff seeks judgment against Defendants, together with equitable relief. In addition, Plaintiff seeks damages from Defendants, and each of them, for incidental, consequential, exemplary, and

28  　　　actual damages including interest, costs, and actual attorneys' fees.

(*See* Doc. 1-1 at 9 ¶ 14, emphasis added.)

4

1   ["Plaintiff alleged a minimum of $35,000 in actual damages, exclusive of attorney fees. There is thus a

2   minimum of $105,000 in controversy."]; Doc. 1-1 at 9 ¶ 14.) Plaintiff asserts that the only purpose for

3   including this allegation was to establish that "the amount in controversy meets the requirement for

4   this case to be considered an unlimited civil case in the Superior Court of California. It is merely a

5   statement that the total amount in controversy is over $35,000.00, and then a summary of the damages

6   sought by Plaintiff." (Doc. 19 at 5.)

7           California district courts are split on whether a defendant can rely on generic damages

8   allegations to establish actual damages. For example, the Central District of California has held where

9   the plaintiff lists damages separately from penalties in the complaint, the court can assume that sums

10   referred to as "damages" mean *actual* damages. *Frank v. FCA US LLC*, 2020 WL 3487640, at **3-4

11   (C.D. Cal. June 15, 2020); *see also Coronel v. Ford Motor Co.*, 2020 WL 550690, at *6 (C.D. Cal.

12   Feb. 4, 2020) (finding amount in controversy met where the complaint stated plaintiff suffered

13   damages "not less than $25,001.00" and sought civil penalties and punitive damages). Other courts

14   require additional evidence to equate generic assertions of damages to "actual" damages. *Mullin v.

15   FCA*, 2020 WL 2509081, at *3 (C.D. Cal. May 14, 2020) (finding defendant's reliance on the

16   complaint's statement that plaintiff "suffered damages … not less than $25,001.00" did not satisfy

17   defendant's burden to show actual damages); *see also Cox v. Kia Motors Am., Inc.*, 2020 WL

18   5814518, at **3-4 (N.D. Cal. Sept. 30, 2020) (finding amount in controversy not shown by

19   preponderance of the evidence where defendant submitted the sale contract containing the vehicle

20   purchase but did not account for the statutory offset and therefore, "failed to establish either the

21   amount of actual damages or the maximum recoverable civil penalties").

22           Faced with a similar set of arguments and facts, this District has also looked to additional

23   evidence, rather than the complaint alone, to determine the amount in controversy. *Quinonez v. FCA

24   US LLC*, 2020 WL 3397565, at **2-3 (E.D. Cal. June 19, 2020). In *Quinonez*, the complaint contained

25   identical language to the complaint here: the plaintiff listed actual damages among the other forms of

26   relief and separately stated the amount in controversy exceeds $25,000. *Id.* Defendant argued the

27   complaint's separate list of damages indicated that the $25,000 did not encompass all types of

28   damages but rather only actual damages. *Id.* Plaintiff argued the opposite. *Id.* The court looked to the

purchase agreement of the vehicle, showing its sales price of $31,500, to guide the interpretation of the damages sum stated in the complaint. *Id.* Given the closeness between the sales price ($31,500) and the stated sum ($25,000), particularly in light of a potential statutory offset, the sales price indicated that the stated sum in the complaint corresponded to actual damages. *Id.*

Because courts should "strictly construe the removal statute against removal jurisdiction," *Gaus*, 980 F.2d at 566, and because defendants bear the burden on removal to satisfy the jurisdictional requirements, the Court finds the Defendant's reliance on the allegation in the complaint alone does not sufficiently establish that the $35,000 encompasses only actual damages. Although Defendant's interpretation of the complaint is plausible, it is equally plausible that Plaintiff's allegation that the amount in controversy "exceeds $35,000.00" is inclusive of actual damages, civil penalties, attorneys' fees, and other types of relief sought. *See Sood v. FCA US, LLC*, 2021 WL 4786451, at *3 (C.D. Cal. Oct. 14, 2021) ("Plaintiffs may very well have included the $25,001 figure only to clarify that the total amount in controversy qualifies the case as unlimited in California courts, and not to establish a minimum amount of actual damages to be recovered."); *see also Schneider v. Ford Motor* Co., 441 F. Supp. 3d 909, 913 (N.D. Cal. 2020) ("[T]he Court could just as easily infer that the $25,001 refers to Plaintiff's *total* damages. This lack of clarity forecloses Defendants' argument that the $25,001 'more likely than not' satisfies the federal jurisdictional amount.") (emphasis in original). Therefore, the Court must determine if Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Lewis*, 627 F.3d at 397.

## 2.   Preponderance of the evidence

### a.   Actual damages

Under the Song-Beverly Act, actual damages include "restitution in an amount equal to the actual price paid or payable by the buyer," less "the amount directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor." Cal. Civ. Code § 1793.2(d)(2)(B)-(C). The Act also applies to leases of consumer goods. *Id.* § 1795.4; *see also id.* § 1793.2(d)(2)(D) (specifying that "a buyer of a new motor vehicle shall also include a lessee of a new motor vehicle").

Generally, courts do not reduce the amount in controversy by affirmative defenses,

1  counterclaims, and potential offsets. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289

2  (1938) (holding "fact that the complaint discloses the existence of a valid defense to the claim" cannot

3  be grounds for showing failure to surmount amount-in-controversy threshold). However, with respect

4  to the amount attributable to the buyer's use of the vehicle under California Civil Code

5  § 1793.2(d)(2)(C), the Ninth Circuit has held that this "use offset" should be included in determining

6  the jurisdictional amount. *Schneider v. Ford Motor Co.*, 756 Fed. Appx. 699, 701 (9th Cir. 2018). The

7  "use offset" amount is determined by multiplying the "actual price of the new motor vehicle paid or

8  payable by the buyer … by a fraction having its denominator 120,000 and having as its numerator the

9  number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle"

10  for correction of the problem. Cal. Civ. Code § 1793.2(d)(2)(C).

11      Defendant argues it can demonstrate that the amount in controversy "more likely than not"

12  exceeds the jurisdictional threshold, even after taking into account Plaintiff's use of the Vehicle. (Doc.

13  18 at 9-10.) However, a review of the relevant papers reveals that Defendant either did not deduct a

14  use offset or otherwise relied on conflicting calculations, preventing the Court from discerning which

15  of the various figures Defendant relies upon.[3] Notwithstanding, under any calculation of actual

16

---

17  [3] For example, with respect to the lease price, the California Motor Vehicle Lease Agreement indicates the total amount
payable on the Vehicle was **$22,921.34**. (Doc. 1-4 at 7.) Defendant's Notice of Removal and attached declaration of former

18  attorney of record, Matthew M. Proudfoot, are consistent with this amount. (*See* Doc. 1 at 9 ¶ 28; Doc. 1-4 at 2 ¶ 5.)
However, the Proudfoot Declaration states that **$22,921.28** is the "total paid and payable" according to the Lease
Agreement. (Doc. 1-4 at 3 ¶ 8.) The declaration and accompanying worksheet of current attorney of record, Scott S.

19  Shepardson, state that the lease price was $22,921.34, (Doc. 18-1 at 2 ¶ 3), and the total paid/payable was **$22,931.34**. (*Id.*
at 4.)

20      Next, Defendant asserts Plaintiff's actual damages amount to **$40,092** after deducting the use offset. (Doc. 18 at 11-
12.) The Notice of Removal states that actual damages total **$22,921.28**. (Doc. 1 at 10 ¶ 32.) Elsewhere, Defendant

21  specifies that the "maximum basic exposure" or "actual damages" is **$41,833.89**. (*See* Doc. 18 at 10.) The $41,833.89 is, in
fact, the "Total Repurchase Estimate" calculation provided in Mr. Shepardson's "Repurchase Estimate" worksheet

22  summarizing Defendant's liability exposure. (*See* Doc. 18-1 at 4.) Mr. Shepardson does not suggest that this figure
represents actual damages. Instead, from the total paid/payable, Mr. Shepardson deducted a trade-in amount ($2,117.36), a
service contract fee ($1,195.00), and a mileage offset ($1,110.84) (4,350 miles/120,000 miles x $22,931.34), then added

23  the residual value of the Vehicle ($23,325.75) to reach $41,833.89. (*Id.*) By contrast, the Proudfoot Declaration indicates
that actual damages, after deducting the use offset of $1,110.84, amount to **$130,431.32**. (Doc. 1-4 at 3 ¶ 8.) As a result of

24  these conflicting amounts, total calculations are also inconsistent. The Notice of Removal indicates the "total potential
damages" amount to **$130,431.32**, which is consistent with the Proudfoot Declaration. (*See* Doc. 1 at 10 ¶ 32; Doc. 1-4 at 3
¶ 8.) Nonetheless, because Defendant's total does not reflect the same "actual damages" amount as the Proudfoot

25  Declaration's calculations, relying on the same "total potential damages" amount results in error. (*See id.*) Separately,
Defendant provides a total potential damages amount of **$125,501.67**, (Doc. 18 at 10), while the Shepardson Declaration

26  calculates a "total liability exposure" of **$106,833.89**. (Doc. 18-1 at 4.) It is worth noting that, according to Plaintiff,
"Defendant alleges that the [Lease Agreement] lists the total lease price of the [V]ehicle as **$49,042.62**. Accordingly, after
including a milage offset, Defendant concludes that Plaintiff is seeking **$124,396.92** in monetary damages and civil

27  penalties." (Doc. 19 at 4-5, citing "Defendant's Opposition at 13: 19-25" [emphasis added].)
    As for the use offset, Mr. Shepardson based his calculation on 4,350 miles, (Doc. 18-1 at 4), while Mr. Proudfoot

28  indicates the Vehicle had 4,250 miles when it presented for its first repair. (Doc. 1-4 at 3 ¶ 8.) They also relied on different
amounts payable. Curiously, both counsel ended up with the same offset amount of $1,110.84. (*See* Doc. 1-4 at 3 ¶ 8; Doc.
18-1 at 4.)

damages, there is one commonality: Defendant fails to consider that Plaintiff leased the Vehicle. As a lessee, Plaintiff asserts that his recovery is limited to the actual amount paid to the seller, and Defendant has "provided no facts indicating how many payments have already been made." (Doc. 6 at 6; Doc. 19 at 5, citing *Brady v. Mercedes-Benz USA, Inc.,* 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002).)

In *Brady*, the Northern District of California clarified how "actual price paid or payable by the buyer," as provided in Cal. Civ. Code § 1793.2(d)(2)(B), is defined "in the context of an automobile lease." *See* 243 F. Supp. 2d at 1007-08. The plaintiff claimed damages including, *inter alia*, restitution in the amount of $22,603.00, which was based on a down payment of $1,449.00 and 28 monthly payments of $755.50, *all of which the plaintiff had paid under the lease*. *Id*. at 1008. The court held that limiting the lessee-plaintiff's recovery to payments "actually made" was consistent with the Song-Beverly Act's "logic and purpose … to make the consumer whole" as well as "the general principle of *restitution* embodied in Cal. Civ. Code § 1793.2(d)(2)(B) which seeks to restore the plaintiff to his or her original position." *Id*. (emphasis in original).

Faced with similar scenarios, other courts within this Circuit have been guided by *Brady* and reject calculations that do not indicate the amount of lease payments actually made. *See, e.g., D'Amico v. Ford Motor Co.*, 2020 WL 2614610, at *2 (C.D. Cal. May 21, 2020) (foreclosing argument that lessee's actual damages include the total amount payable and noting that *Brady* "squarely concludes that in the context of a lease, the Act's phrase 'actual price paid or payable by the buyer' is 'limit[ed] ...to payments actually made'"); *Ghayaisi v. Subaru of Am., Inc.*, 2020 WL 1140451 (C.D. Cal. Mar. 6, 2020) (declining to accept defendant's damages calculation based on total lease payments where defendant "presented no facts regarding how many payments were actually made"); *Cruz v. Mercedes-Benz USA, LLC*, 2020 WL 5797917, at *2 (C.D. Cal. Sept. 29, 2020) (concluding that where defendant provided "no facts to support the amount of lease payments made by" plaintiff, the court could not "discern what amount [plaintiff] has paid towards the lease" and thus, failed to carry its burden in demonstrating "what portion of the lease may be considered in determining actual damages"). In cases involving a purchase, courts have emphasized the contrast between leases and purchases in determining actual damages calculations. *See, e.g., Mpock v. FCA US LLC*, 2021 WL 5356472, at *10

n.7 (E.D. Cal. Nov. 17, 2021), *report and recommendation adopted*, 2021 WL 5966833 (E.D. Cal. Dec. 16, 2021) (finding *D'Amico* inapposite because it involved a lease rather than a purchase); *Messih v. Mercedes-Benz USA, LLC*, 2021 WL 2588977, at *4 n.3 (N.D. Cal. June 24, 2021) (finding that in case involving the purchase of a vehicle, plaintiff's reliance on *D'Amico* and *Ghayaisi* was misplaced as both involved leases rather than purchases).

Because none of the calculations offered by Defendant indicate the amount of lease payments Plaintiff made, and Defendant does not provide facts to support such an amount, Defendant fails to meet its burden of showing that any of its proffered actual damages amounts should be included in determining the amount in controversy calculation.

### b.   Civil penalties

In addition to actual damages, Defendant points to Plaintiff's claim for civil penalties as a basis for satisfying the amount in controversy requirement. (*See* Doc. 1 at 9-10 ¶¶ 29-30, 32; Doc. 18 at 10-12.) Plaintiff argues that because the amount of actual damages is speculative, so too is the civil penalty calculation. (Doc. 6 at 7.)

Generally, civil penalties under the Song-Beverly Act are properly included in determining the amount in controversy. *Mullin*, 2020 WL 2509081, *4 ("The amount in controversy for diversity jurisdiction may include punitive damages if recoverable under state law.") (citing *Brady*, 243 F. Supp. 2d at 1009). The Song-Beverly Act does not provide for punitive damages, but "[c]ourts have held that the civil penalty under [Song-Beverly] is akin to punitive damages, because both have the dual effect of punishment and deterrence for defendants." *Id.* (citations omitted). Moreover, "courts have held in other contexts that treble damages authorized by state law may be included in determining the amount in controversy" and Song-Beverly "in effect authorizes treble damages." *Id.* (citations omitted).

The Song-Beverly Act allows for civil penalties up to two times the actual damages suffered by the plaintiff. *Mullin*, 2020 WL 2509081, *4 (*citing Brady*, 243 F. Supp. 2d at 1009). "If the amount of actual damages is speculative, however, an attempt to determine the civil penalty is equally uncertain." *Chavez v. FCA US LLC*, 2020 WL 468909, at *2 (C.D. Cal. Jan. 27, 2020) (citing *Edwards v. Ford Motor Co.*, 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016)). Because Defendant did not

establish the amount of actual damages by a preponderance of the evidence, the amount of civil penalties is equally uncertain. Defendant, therefore, failed to satisfy its burden of proof required to include civil penalties in the jurisdictional amount.

*c.*    *Attorneys' fees*

Defendant also relies on Plaintiff's claim for attorneys' fees to satisfy the jurisdictional minimum. (Doc. 1 at 9-10 ¶¶ 30-32; Doc. 18 at 12-13.) The Ninth Circuit held that future attorneys' fees awards may be included in determining the amount in controversy under fee-shifting statutes. *Fritsch v. Swift Transp. Co. of Ariz.*, *LLC*, 899 F.3d 785, 795 (9th Cir. 2018); *see also Martinez v. Ford Motor Co.*, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) ("Attorneys' fees are available to Plaintiffs here under California Civil Code Section 1794(d)."). District courts may exclude future fees if they are too speculative or if the defendant fails to show with a "reasonable probability that the amount in controversy exceeds the minimum." *Fritsch*, 899 F.3d at 795. "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.*

Defendant argues that "Plaintiffs' attorneys in Song-Beverly cases tried or prepared for trial regularly request more than $65,000 in fees." (Doc. 1 at 9-10 ¶ 31.) Defendant has not met its burden of proof to include either of its estimates of attorneys' fees in the amount in controversy calculation. Defendant's only support comes from a single sentence in the declaration of Mr. Proudfoot, which makes the same assertion as Defendant. (*See* Doc. 1-4 at 3 ¶ 9 ["Plaintiffs' attorneys in Song Beverly cases tried or prepared for trial regularly request more than $65,000 in fees."].)[4] A single declaration stating a lump sum of future of attorneys' fees does not estimate future fees with a reasonable probability. *See Schneider*, 441 F. Supp. 3d at 914 (finding a declaration stating that "claims for attorneys' fees in these cases regularly approach or exceed $50,000" and that a recent fee demand by Plaintiff's counsel exceeded $300,000 was not competent proof to include fees). The fee estimate also lacks the type of evidentiary support that typically allows for the inclusion of fees, such as fee

---

[4] In opposition to Plaintiff's motion to remand, Defendant instead cites to the declaration of Mr. Shepardson, who substituted as counsel of record in place of Mr. Proudfoot in the interim between filing the Notice of Removal and Defendant's opposition to remand. (*See* Docs. 9, 12.) Mr. Shepardson essentially makes the same assertion: "The mainstay of my law practice is defending Song-Beverly cases. Plaintiffs' attorneys in these cases regularly request more than $65,000 in fees. I do not see this case as exception to that general rule of thumb." (Doc. 18-1 at 2 ¶ 5.)

petitions submitted in similar cases. *See Martinez*, 2019 WL 1988398, at *7 (including attorneys' fees in the amount in controversy where defendant submitted "five petitions for attorneys' fees filed in other similar cases by the same counsel who represent Plaintiffs here").

Finally, California district courts, including this District, have rejected nearly identical arguments to those raised by Defendant. For example, in *Mpock v. FCA US LLC*, the court agreed that an attorneys' fees estimate of $35,000 was "too speculative to establish the threshold amount in controversy" based on the assertion that "Plaintiff's attorneys regularly request more than $75,000 in Song-Beverly cases tried or prepared for trial." 2021 WL 5356472, at *13 (E.D. Cal. Nov. 17, 2021). The court explained:

> Defense counsel's declaration does not provide any factual details underlying the claims, litigation strategies, or the litigation timelines of any of the cases cited in support of her fees averment; therefore, it is impossible for this Court to determine whether such cases are analogous to the instant matter and thus a persuasive indicator regarding the amount of attorney's fees Plaintiff might recover in this action.

*Id.*

In *D'Amico v. Ford Motor Company*, the defendant argued that "[e]ven without adding reasonable attorney's fees, the amount-in-controversy exceeds $75,000." 2020 WL 2614610, at *4 (C.D. Cal. May 21, 2020). Pointing to this assertion, the court found that the defendant made "no effort to explain what amount of attorney fees might be sought or awarded in this case." *Id.* Instead, the defendant argued "generally" that "plaintiff's attorneys regularly request more than $65,000 in Song Beverly cases tried or prepared for trial," and cited a collection of cases. *Id.* The court was "not persuaded that 'more than $65,000' [was] a reasonable estimate of attorney fees" and explained that "many cases alleging violations of the Act settle early, and Defendant provides no explanation for why this case is similar to ones that went to trial. Nor does Defendant provide an estimate of the hours that will be incurred or hourly rates that would apply in this case." *Id.*

Defendant raises the same arguments as those advanced and rejected in *Mpock* and *D'Amico*, (*see*, *e.g.*, Doc. 1 at 9 ¶¶ 31; Doc. 18 at 5, 12), but fails to provide (1) "factual details underlying the claims, litigation strategies, or the litigation timelines of any of the cited cases" or an explanation of how this case is similar to those cited; (2) the amount of attorneys' fees that might be sought or awarded in this case; or (3) an estimate of the hours incurred or hourly rates it would apply in this

case. *Mpock*, 2021 WL 5356472, at *13; *D'Amico*, 2020 WL 2614610, at *4.

Like its calculations for actual damages and civil penalties, Defendant's $65,000 calculation is purely speculative and lacks evidentiary support. In sum, none of these amounts can be included in the amount in controversy calculation. *See Fritsch*, 899 F.3d at 795. Accordingly, the Court finds Defendant has failed to meet its preponderance burden to establish that the jurisdictional threshold of $75,000 is in controversy.

**B.    Remaining Arguments**

Because Defendant has failed to meet its burden to show that the amount in controversy exceeds the jurisdictional minimum, the Court need not address Plaintiff's arguments related to complete diversity or principles of comity. (*See* Doc. 6 at 8-11.)

**IV.    Conclusion and Order**

For the reasons set forth above, the Court **ORDERS**:

1.    Plaintiff's motion to remand (Doc. 6) is **GRANTED**.

2.    The case is remanded to the Superior Court for the County of Kern and the Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated:   **July 3, 2024**

UNITED STATES DISTRICT JUDGE